JAMES W. HARRINGTON v. CHAUNCEY M. BREWER.

*Laches—Reformation of land contract.*

1. After fifteen years' delay in seeking relief a contract to sell land was reformed by cutting down the price where the vendor had obtained the signature of an illiterate purchaser to a substituted contract in which the original purchase price was doubled, and had made him believe, when he found it out, that the change was an unsubstantial formality, and had allowed years to pass without calling for payments.

2. A defense to a bill in equity fails so far as it depends on any affirmative showing, where the evidence can only be used to establish an entirely different defense from that which the answer outlines.

3. Where a case for the correction of a writing depends on parol evidence it is not necessarily established by disproving the defense, though such disproof may aid complainant's prima facie showing.

Appeal from Calhoun. (Hooker, J.) Jan. 29.—April 9.

BILL to reform contract, etc. Complainant appeals. Reversed.

*Miner & Stace* and *Henry F. Severens* for complainant.

*Wm. H. Porter* and *Jno. C. Patterson* for defendant.

COOLEY, C. J. The bill in this case is filed to reform a contract for the conveyance of lands, and to obtain specific performance of the contract as reformed.

The bill sets forth that on June 9, 1866, one Charles E. Gregg was owner of the lands, subject to two mortgages to defendant: one of twenty-two hundred dollars and one of three hundred dollars, both bearing interest. That Gregg offered the lands for sale to complainant, and defendant advised him to buy, offering if he did so to extend the time for the payment of the mortgages for twenty years. That complainant concluded to do so, and made the purchase of Gregg for fifteen hundred dollars, subject to the mortgages. That by agreement the lands were conveyed to one Joseph C.

Frink, who was to hold the same until performance should be made of complainant's undertaking with defendant, and then convey to complainant. That payment was made to Gregg, and conveyance given to Frink for the nominal consideration of five hundred dollars, but for no real consideration, and Frink gave to complainant a contract agreeing to convey to him the lands when the sum of twenty-five hundred dollars, with interest, should be paid. That complainant was then in possession of the lands as tenant of Gregg, and from that time continued in possession, but claimed as owner, and made valuable improvements. That on August 16, 1867, Frink, at the solicitation of Brewer, gave him a quitclaim deed of the lands without consideration, and without the knowledge of complainant, and in July of the next year defendant met complainant and stated and insisted to him that complainant ought to surrender his contract with Frink and take a new one to the same effect from defendant; and complainant assenting thereto, a contract was prepared in duplicate, by direction of defendant, which defendant represented was for the same principal sum and on the same terms with the contract from Frink, except that it provided for the giving of a conveyance by defendant instead of by said Frink when payment should be made, and said duplicates were signed by the parties.

The bill further states that complainant was unable to read; that he had implicit confidence in defendant, with whom he had dealt and advised in business matters before, and he signed the duplicate believing that what defendant said was true; that one of the duplicates was delivered to complainant and he took it home, where it was read by his wife, and he then found that, instead of being substantially the same as the Frink contract, the purchase price mentioned in it was five thousand dollars; that complainant, with his wife, at the earliest opportunity thereafter applied to defendant to have the contract rectified, but defendant replied to them in substance that it did not matter for the wording of the contract; that all that was due to him was the sum of twenty-five hundred dollars and accrued interest, and that as soon as that

sum was paid complainant should have his deed; that after-some conversation, and several promises by defendant, complainant having full faith and confidence in defendant, and in his good faith and integrity, and believing, after what he had stated, that the wording of the contract did not matter, and not wishing to offend defendant, he rested content on his statements and promises.

The bill further states that complainant has built a house on the lands at a cost of nineteen hundred dollars, and made other improvements at a cost of two thousand dollars; that up to March 16, 1882, he had paid, in principal and interest, three thousand three hundred and thirty-one dollars and seventy-six cents on the contract, and was then owing one thousand eight hundred and forty-seven dollars and twenty-seven cents; that he then called on defendant for an accounting and settlement, when defendant demanded of him payment of the whole sum of five thousand dollars, and interest, less what had already been paid, and refused to settle and give a conveyance on any other terms; claiming among other things, that he had a title to the lands, not merely by the conveyance from Frink, but by the foreclosure in April, 1866, of his smaller mortgage, by advertisement; and on February 12, 1883, the defendant served on complainant a formal notice to quit and surrender possession of the lands. Complainant offers to pay what is justly due, and prays relief.

The defendant answered the allegations of the bill specifically and in detail. He admits that he held mortgages on the lands as stated; denies that he ever advised complainant to purchase the lands of Gregg, or that he ever bought them in fact; admits that Gregg gave a conveyance to Frink, purporting to convey the lands in fee-simple for a consideration of five hundred dollars, but says he does not know, and is not informed, save by the bill, whether the deed from Gregg to Frink was with or without consideration, and as to that he leaves the complainant to his proofs; avers that defendant obtained title to the lands by the foreclosure of his smaller mortgage, and that thereafter Frink, having lost all interest in said lands which he obtained through the deed from

Gregg, quitclaimed to defendant, but actually conveying no title thereby. He then sets up the contract executed between himself and complainant in duplicate as an honest and just contract; denies that complainant, soon after its execution, made any claim to having been defrauded; and claims justly due to himself on the contract upwards of six thousand dollars.

The case was put at issue and voluminous testimony taken. It will be convenient in reviewing the case to consider, first, the view of the case which is taken by and on behalf of the defendant.

In the brief for the defendant the theory which it was endeavored to support on the evidence was the following : That the defendant, in 1865, held two mortgages on the premises ; " that he published notice under the power of sale contained in one of the mortgages, and bid in the property at sheriff's sale, April 3, 1866 ; that on June 9, 1866, before the time for redemption expired, he purchased the equity of redemption of said Charles E. Gregg, and paid him for it, and to avoid merging his mortgage interest he had the premises conveyed to Joseph C. Frink, to hold the equity of redemption until his foreclosure sale and title thereunder should become absolute ; that this course was pursued to cut off a vested right of dower and a subsequent mortgage on the premises held by Hannah Mott, to get immediate possession of the premises, and to obtain a direct chain of title by deed from the owners, and thereby save the numerous questions growing out of an involuntary alienation of lands ; that after the expiration of the time for redemption, Frink conveyed the premises to the defendant pursuant to their understanding," and that afterwards the written contract was drawn and executed in entire accord with the understanding the parties had arrived at.

This theory, it will be seen, assumes that the conveyance to Frink was in the interest of defendant, to save a merger of his mortgage interests, which might have occurred had defendant taken a conveyance to himself, and to enable him to foreclose, with the purpose, among other things, to cut off

the mortgage of Mott. If the evidence supported the theory, it would be fatal to complainant's case.

The first and most obvious remark upon this theory is that it is not in any way foreshadowed by the answer. The answer goes into great particularity in its recital of supposed facts, but it is nowhere asserted or hinted that Frink took the title in defendant's interest, or that he conveyed to defendant in pursuance of an antecedent understanding. On the contrary, the answer pretends ignorance " whether the deed from said Gregg to said Frink of said lands was with or without consideration," and " denies that said land was quit-claimed to him by said Frink at his (said defendant's) special instance and request," as the bill had asserted. As this answer was evidently prepared with deliberation, and with the intent to meet with circumstantiality all parts of the complainant's case, and is much more full and particular than is customary, we cannot look upon these averments as mere matters of pleading, but are driven almost irresistibly to the conclusion that the theory now advanced for the defendant is an after-thought, suggested by the exigencies of the case when the evidence was taken. But the conclusion becomes absolute and unquestionable when we examine the deed from Gregg to Frink, which defendant's present theory supposes to have been made in his interest, and to enable him among other things to get rid of the Mott mortgage ; for the deed to Frink is not only made subject to the Mott mortgage, but actually charges the grantee with its payment. It is perfectly evident, therefore,· that this deed had no such purpose as defendant pretends, and the whole defense, so far as it rests upon an affirmative showing, falls to the ground.

It would not, however, necessarily follow from this that complainant's case was to be accepted as established. He comes into court after great length of time to correct a writing upon parol evidence; and defendant would have been at liberty to keep silence and leave complainant to make out his case as best he might. Defendant has preferred to give what he claims were the facts, and it is easily shown that there is a fatal inconsistency between his pleading and his present

theory, as well as between his present theory and the facts in proof. But disproving his case is not the same as proving the complainant's, though it may tend to give more confidence in such case as the complainant may be able prima facie to make out.

. Complainant and his wife both testify in the case, and their evidence tends strongly to support the bill. Complainant claims to have relied upon defendant somewhat as an adviser in his business matters, and though it cannot be said on his evidence that any relation of special confidence was established between them, there is still enough in the case to excuse his relying upon what should be said by defendant beyond what would be justifiable in the case of a comparative stranger. If complainant's evidence is true, the conveyance to Frink was probably a mere convenience to complainant and Gregg ; for it would seem that complainant was to pay to Frink for Gregg some small demands the latter was owing Frink, and Frink was probably to hold the title until payment was made. It is evident, also, that as between Gregg and complainant the latter was to pay the Mott mortgage, as well as the mortgages to defendant; and, indeed, this is not seriously disputed now, though as that mortgage was cut off by defendant's foreclosure, it seems to have passed almost entirely from the recollection of all parties until the investigations in this suit were entered upon.

Complainant testifies positively to paying Gregg fifteen hundred dollars in money and property, and Gregg corroborates his testimony in all important particulars. One item in the payment consisted of a horse, which Gregg was to take for three hundred dollars. Defendant, on the other hand, now says he paid for this horse for Gregg, and this is the consideration he now claims was given for the arrangement whereby the title was conveyed by Gregg to Frink, to be held for himself. According to him, therefore, he sold to complainant for five thousand dollars the land, which represented in his hands only his two mortgages and this horse,—in all about three thousand dollars.

We do not deem it necessary to examine and analyze the

evidence in detail in this opinion. We think the complainant, under many disadvantages arising out of the great lapse of time, has substantially made out his case. There are in the surrounding facts an unusual number of circumstances, all concurring to the one result, and relieving the case of the embarrassment that usually attends the setting up of a case adverse to the writings after such a lapse of time. And it does not appear that at any time complainant has done anything which is in recognition of the writings as they stand, unless the failure to institute proceedings sooner can be considered as an acquiescence in them. But complainant and his wife both testify to having been lulled into security by the assurances of defendant; and the fact that for so many years he has allowed the demand to run without insisting upon payments, which would be equal to the interest on the principal he now claims was due him, was well calculated to confirm in complainant's mind the expectation that the promises of defendant to convey, when the two thousand five hundred dollars and interest had been paid, were to be observed. It was a circumstance calling for explanation, to say the least, that defendant should for years, according to his present claim, leave a large sum to accrue for interest without calling for payment, and without, so far as appears, any special reason existing why payment should not be insisted upon.

We think complainant is entitled to the relief prayed, and the decree of the circuit court will be reversed, and one entered in this Court in accordance with the views now expressed. Complainant must pay within three months the amount which was owing to defendant on his two mortgages at the date of the conveyance to Frink, with interest thereon, after deducting the payments which have been made, and the costs of this litigation. In default of payment, defendant may proceed to a sale as upon decree of foreclosure. The record will be remanded, and a reference can be had to compute the amount due, unless the parties agree upon it.

The other Justices concurred.